OPINION OF THE COURT
Per Curiam.
The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts served the respondent with a verified petition, dated February 9, 2010, containing 16 charges of professional misconduct, and the respondent submitted an answer to the petition. The Special Referee sustained charges 1 through 10 and 12 through 16. The Grievance Committee now moves to confirm the Special Referee’s Report. By cross motion, the respondent asks the Court to set aside the Special Referee’s findings with respect to charge 5, as well as his decision barring the respondent from relitigating the factual allegations raised in charges 15 and 16 based on the doctrine of collateral estoppel. Charges 1 through 10, as amended, emanate from a common set of factual allegations, as follows:
In or about November 2003, Gregory Olive was the owner of real property located on Pacific Street in Brooklyn (hereinafter *70 the subject property). At or about that time, Mr. Olive retained the respondent to represent him when the mortgage on the subject property was foreclosed.
In or about February 2004, the respondent obtained an order vacating the judgment of foreclosure and sale, and staying further proceedings for 90 days pending a refinance of the outstanding mortgage. The respondent referred Mr. Olive to Asnel Valcin for assistance in refinancing. Mr. Valcin advised Mr. Olive that, since his credit was poor, he could not obtain a new mortgage. However, Mr. Valcin advised Mr. Olive that he could, nonetheless, help him “save” the subject property. Mr. Valcin told Mr. Olive that he would procure someone to obtain a mortgage on the subject property and that, if Mr. Olive made the payments on that mortgage, the subject property would be deeded back to him.
The respondent thereafter prepared, or caused to be prepared, a contract of sale between Mr. Olive, as seller, and Ama Valcin (Mr. Valcin’s sister-in-law), as purchaser. The respondent knew or should have known that the lender would rely upon that contract in issuing a mortgage.
The contract reflected a purchase price of $400,000. Moreover, it provided, inter alia, that the respondent would receive, and hold in her attorney trust account, a down payment in the amount of $80,000 until the closing of title. However, the respondent never received the $80,000, or any other amount, as a down payment.
On June 30, 2004, the respondent represented Mr. Olive at the closing, pursuant to the aforementioned contract of sale. At or about that time, the respondent directed Mr. Olive to sign numerous documents, including a deed in which he transferred, to Ama Valcin, all of his rights, title, and interest in and to the subject property. She also directed him to sign an HUD-1 settlement statement (hereinafter the HUD-1 statement), which falsely reflected that Ama Valcin made a down payment on the contract in the amount of $8,000. The HUD-1 statement also falsely reflected that Mr. Olive received $69,956.46 in “cash” from Ama Valcin. In fact, Mr. Olive received no proceeds from the sale of the subject property. The respondent knew or should have known that it is a federal crime to knowingly make false statements on an HUD-1 statement. She failed to explain to Mr. Olive any of the documents, which she directed him to sign.
At the closing, the respondent gave Mr. Olive a treasurer’s check drawn on First Washington Bank, payable to Mr. Olive in *71 the amount of $72,000, remitted by “Dorcas S. Valcin” (Mr. Valcin’s wife). The respondent directed Mr. Olive to endorse the $72,000 check and return it to her. After he complied with this directive, the respondent, without Mr. Olive’s knowledge or consent, tendered the $72,000 check to a third party. Thereafter, the check was endorsed “Not used for purposes intended.” It was deposited into an account in the name of “Dorcas S. Valcin” at First Washington Bank on or about July 29, 2004. The respondent knew that the $72,000 check was just a “show check,” intended to induce the bank to disburse the mortgage proceeds.
At the closing, the respondent received a check on behalf of Mr. Olive, payable to her, as attorney, in the sum of $15,690 from the proceeds of the sale. On or about July 2, 2004, the respondent, or someone on her behalf, deposited the $15,690 check into the respondent’s attorney trust account at North Fork Bank. The respondent issued a check in the sum of $13,560, payable to “Professional Realty,” from the aforementioned $15,690. That check cleared the respondent’s attorney trust account on or about July 9, 2004. At or about that time, the respondent was the sole owner of “Professional Realty.” Mr. Olive did not owe “Professional Realty” any sum of money and did not knowingly consent to the payment of any money to “Professional Realty.”
After the closing, Mr. Olive and his family resided in the basement of the subject property, paying Ama Valcin’s mortgage.
In or about April 2005, the respondent had an associate, Gabriel Amene, represent Ama Valcin in eviction proceedings against Mr. Olive and his family. In or about July 2005, the respondent had an associate represent Ama Valcin in the sale of the subject property to Curtis Duverney. At or about that time, the respondent had an associate, Biat Maderer, represent Mr. Duverney in eviction proceedings against Mr. Olive and his family. Ms. Valcin’s and Mr. Duverney’s interests were materially adverse to Mr. Olive’s interests. The respondent failed to obtain Mr. Olive’s consent to represent, or have her associate represent, Ms. Valcin or Mr. Duverney.
Charge 1 alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of former Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).
Charge 2 alleges that the respondent participated in the creation of a false record, in violation of former Code of Profes *72 sional Responsibility DR 7-102 (a) (6) (22 NYCRR 1200.33 [a] [6]).
Charge 3 alleges that the respondent counseled and assisted her client in conduct that she knew or should have known was illegal and fraudulent, in violation of former Code of Professional Responsibility DR 7-102 (a) (7) (22 NYCRR 1200.33 [a] [7]).
Charge 4 alleges that the respondent misappropriated funds entrusted to her as a fiduciary, incident to the practice of law, in violation of former Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
Charge 5 alleges that the respondent converted funds entrusted to her as a fiduciary, in violation of former Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
Charge 6 alleges that the respondent intentionally failed to advocate for her client, in violation of former Code of Professional Responsibility DR 7-101 (a) (1) (22 NYCRR 1200.32 [a] [1]).
Charge 7 alleges that the respondent prejudiced and damaged her client during the course of the professional relationship, in violation of former Code of Professional Responsibility DR 7-101 (a) (3) (22 NYCRR 1200.32 [a] [3]).
Charge 8 alleges that the respondent allowed her own personal, financial, or business interests to affect her professional judgment, in violation of former Code of Professional Responsibility DR 5-101 (a) (22 NYCRR 1200.20 [a]).
Charge 9 alleges that the respondent engaged in impermissible conflicts of interest by representing current clients in matters against a former client, in violation of former Code of Professional Responsibility DR 5-108 (a) (1) (22 NYCRR 1200.27 [a] [1]).
Charge 10 alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of former Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).
Charges 12 through 14, as amended, emanate from a common set of factual allegations, as follows:
In correspondence to the Grievance Committee dated March 7, 2006, the respondent falsely claimed that she “later found out that Ms. Valcin had sold the property to another person and [that] Mr. Olive [was] being evicted.”
*73 Charge 12 alleges that the respondent engaged in misrepresentation, dishonesty and deceit, in violation of former Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).
Charge 13 alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of former Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).
Charge 14 alleges that the respondent engaged in conduct which adversely reflects on her fitness as a lawyer, in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).
Charges 15 and 16, as amended, emanate from a common set of factual allegations, as follows:
On or about August 13, 2007, Peggy Collen began employment as an attorney at the respondent’s law firm. On or about August 29, 2007, without Ms. Collen’s permission, the respondent drafted and sent a letter to a client, over Ms. Collen’s name, which included statements that Ms. Collen knew not to be true. Thereafter, the respondent instructed Ms. Collen to “misrepresent herself’ to at least two clients in an effort to collect fees on the respondent’s behalf.
Charge 15 alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of former Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).
Charge 16 alleges that the respondent engaged in conduct that adversely reflects on her fitness as a lawyer, in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).
Based upon the respondent’s admissions and the evidence adduced, including the record of prior proceedings before the New York State Unemployment Insurance Board and the Appellate Division, Third Department, in the Collen matter, the Special Referee properly applied the doctrine of collateral estoppel, and properly sustained charges 1 through 10 and 12 through 16. Accordingly, the Grievance Committee’s motion to confirm the Special Referee’s report is granted and the respondent’s cross motion is denied.
In determining an appropriate measure of discipline to impose, the Court has considered the respondent’s testimony in mitigation, as well as that of her two character witnesses and *74 18 character letters, attesting to her reputation for “integrity, honesty and trustworthiness,” her pro bono and other charitable works in the community, and her stated remorse. However, the Special Referee found “little to credit” by way of mitigation. Indeed, the Special Referee found, and we agree, that the respondent failed on numerous occasions to safeguard the interests of her client, Gregory Olive. Moreover, the respondent was not candid with the Grievance Committee. Similarly, misrepresentation and lack of candor were elements of the Collen matter.
Under the totality of circumstances, the respondent is suspended from the practice of law for a period of five years.
Eng, EJ., Masteo, Rxveea, Skelos and Balkin, JJ., concur.
Ordered that the petitioner’s motion to confirm the Special Referee’s report is granted; and it is further,
Ordered that the respondent’s cross motion to set aside the Special Referee’s findings with respect to charges 5, 15 and 16 is denied; and it is further,
Ordered that the respondent, Jennifer C.E. Ajah, admitted as Chinyere Akuezi Ekenna, is suspended from the practice of law for a period of five years, commencing August 23, 2013, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than February 23, 2018. In such application, the respondent shall furnish satisfactory proof that during said period she: (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2), and (4) otherwise properly conducted herself; and it is further,
Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Jennifer C.E. Ajah, admitted as Chinyere Akuezi Ekenna, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,
*75 Ordered that if the respondent, Jennifer C.E. Ajah, admitted as Chinyere Akuezi Ekenna, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 691.10 (f).